# EXHIBIT A

KNIGHT
FIRST AMENDMENT
INSTITUTE at
COLUMBIA UNIVERSITY

475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
info@knightcolumbia.org

August 2, 2024

**VIA EMAIL**

Dionne Hardy, FOIA Officer
Office of Management and Budget
725 17th Street NW, Suite 9204
Washington, DC 20503
OMBFOIA@omb.eop.gov

**Re: Freedom of Information Act Request**
**Expedited Processing Requested**

To whom it may concern,

The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute")[1] submits this request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records and communications related to two decisions by the Office of Information and Regulatory Affairs ("OIRA") rejecting proposals to expand social media disclosure requirements for foreign travelers. The first involves an April 2, 2021 decision regarding a Department of Homeland Security ("DHS") proposal to collect social media information on immigration and foreign travel forms (Information Collection Review ("ICR") Reference Number 202007-1601-001). The second involves a May 26, 2023 decision regarding a U.S. Customs and Border Patrol ("CBP") proposal to collect social media identifiers in the Electronic System for Travel Authorization ("ESTA") (ICR Reference Number 202112-1651-004).

[1] The Knight First Amendment Institute is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.

## I. Background

This is a request for records relating to OIRA's review of DHS proposals to collect social media identifiers on immigration and travel forms.

The government first began requesting social media information on certain travel forms on a voluntary basis during the Obama administration. In 2016, DHS began collecting social media identifiers from ESTA applicants. Office of Management and Budget, "Notice of Office of Management and Budget Action," December 19, 2016, https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201607-1651-003#. Because this collection was optional, ESTA applicants—who are individuals eligible for visa waivers when entering the United States—were not required to submit their social media identifiers. At the time, OMB approved this optional collection on the condition that DHS conduct a review and report its compliance with privacy rules. *Id.* The review, completed in 2017, stated that DHS had not demonstrated that its collection of social media identifiers was useful to the visa-vetting process because DHS had failed to "collect, track, and analyze meaningful data that can be used to determine the efficacy." DHS Privacy Office, Privacy Compliance Review of the U.S. Customs and Border Protection Electronic System for Travel Authorization 8 (2017) https://www.dhs.gov/sites/default/files/publications/CBP-ESTA%20PCR%20final%20report%2020171027.pdf.

The government first instituted mandatory collection of social media identifiers in 2019, as part of President Trump's explicitly discriminatory extreme vetting initiative. *See* Executive Order 13,780, 82 Fed.Reg. 13,209, 13,215 (Mar. 9, 2017) (signed Mar. 6, 2017); Memorandum for the Secretary of State, the Attorney General, and the Secretary of Homeland Security, 82 Fed. Reg. 16,279, 16,279(Apr. 3, 2017) (signed Mar. 6, 2017). At that time, the Department of State ("DOS") began requiring nearly all immigrant and non-immigrant visa applicants to turn over their social media identifiers (the "Disclosure Requirement"). *US Now Seeking Social Media Details from All Visa Applicants*, Associated Press (June 1, 2019), https://apnews.com/united-states-government-travel-c96a215355b242e58107c2125c18fc4a. That mandatory collection is subject to an ongoing constitutional challenge. *Doc Society v. Blinken*, 2023 WL 5174304 (D.D.C. Aug. 11, 2023), *appeal docketed* No. 23-5232 (D.C. Cir. Oct. 17, 2023).

When President Biden took office, he immediately revoked President Trump's discriminatory executive order that provided the impetus for the Disclosure Requirement. *Ending Discriminatory Bans on Entry to The United States*, Proclamation No. 10141, 86 Fed. Reg. 7,005, 7,005 (Jan. 20, 2021) ("Biden Proclamation"). President Biden also directed the Secretaries of State and Homeland Security, in consultation with

the Director of National Intelligence, to conduct a review of current visa vetting procedures and to complete a report of that review by May 20, 2021. Biden Proclamation § 3(d). In particular, he ordered a "review of the current use of social media identifiers in the screening and vetting process, including an assessment of whether this use has meaningfully improved screening and vetting, and recommendations in light of this assessment." *Id.* To date, the Biden administration has refused to release the results of its review, though it kept the Disclosure Requirement in place.

Since 2020, DHS has twice sought to expand the government's collection of social media identifiers—once during the Trump administration, and a second time during the Biden administration. Before it could implement these proposals, DHS was required to seek approval from OIRA. OIRA's review ensures that the practical utility of data collection outweighs its monetary and social costs. 44 U.S.C. § 3508; Office of Management and Budget, "OIRA Conclusion," April 2, 2021, https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=202007-1601-001 (hereinafter "OIRA Conclusion Re: ICR 202007-1601-001").

OIRA ultimately denied both of the requests. On April 2, 2021, OIRA rejected a request from DHS to add a social media disclosure requirement to twelve different immigration forms, including applications for asylum, applications for naturalization, and registration for classification as a refugee. OIRA Conclusion Re: ICR 202007-1601-001; Agency Information Collection Activities: Generic Clearance for the Collection of Social Media Information on Immigration and Foreign Travel Forms, 85 Fed. Reg. 7,573, 7,573–77 (Feb. 10, 2020). In a short statement accompanying the rejection, OIRA stated that "the agency has not adequately demonstrated the practical utility of collecting this information." OIRA Conclusion Re: ICR 202007-1601-001. OIRA instructed DHS that any future proposal for social media vetting must be supported by a showing that the "practical utility" of the collection outweighs its monetary and social costs. *Id.*

On May 26, 2023, OIRA denied a separate request from CBP to change the ESTA social media collection from optional to mandatory. Office of Management and Budget, "OIRA Conclusion," May 26, 2023, https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=202112-1651-004 (hereinafter "OIRA Conclusion Re: ICR 202112-1651-004"). This time, CBP had argued that their goal was to achieve parity with the Disclosure Requirement, which applies to "most U.S. visa applicants worldwide." Arrival and Departure Record, Nonimmigrant Visa Waiver Arrival/Departure, ESTA, 87 Fed. Reg. 10,223, 10,224 (Feb. 23, 2022). CBP's request would have extended a social media disclosure requirement to the many millions of additional individuals who enter the country each year pursuant to the Visa Waiver Program. *Id.* OIRA's

notice stated that the collection will remain optional, without providing further explanation. OIRA Conclusion Re: ICR 202112-1651-004.

## II. Records Requested

The Knight Institute requests the following records:

1. All records and communications relating to OIRA's review of and decision regarding ICR Reference Number 202007-1601-001, titled "Generic Clearance for the Collection of Social Media Information on Immigration and Foreign Travel Forms."

2. All records and communications relating to OIRA's review of and decision regarding ICR Reference Number 202112-1651-004, titled "Arrival and Departure Record and Electronic System for Travel Authorization (ESTA)."

We ask that you disclose all segregable portions of otherwise exempt records. *See* 5 U.S.C. § 552(b). We also ask that you provide responsive electronic records in their native file format. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (e.g., PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files.

## III. Application for Expedited Processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the requested records because the information they contain is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

### *A. The Knight Institute is primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The Knight Institute is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute was established at Columbia University to defend and strengthen the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission.[2] Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute performs. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004)

[2] *See About the Knight Institute*, Knight First Amendment Inst., https://perma.cc/8UYT-RUUZ.

(finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information" (quoting *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003))).[3]

For example, the Institute disseminates information about government activity—including information obtained through FOIA—through a variety of means, including its website,[4] X account,[5] press releases,[6] blog posts,[7] op-eds,[8] and regular engagement with the press.[9]

---

[3] *See id.* (explaining that a priority of the Knight Institute's work is "ensuring access to information necessary for self-government").

[4] *See* Knight First Amendment Inst., https://knightcolumbia.org.

[5] *See* Knight First Amendment Inst. (@knightcolumbia), Twitter, https://twitter.com/knightcolumbia (Knight Institute account with over 15,000 followers).

[6] *See, e.g.*, *Knight Institute Calls on DOJ's Executive Office for Immigration Review to Suspend Policy Silencing Immigration Judges*, (Jan. 6, 2020), https://perma.cc/GT69-A8SC (describing an agency policy obtained through FOIA).

[7] *See, e.g.*, Anna Diakun, *Redactions in CDC Communications Policies Leave Key Questions Unanswered*, Knight First Amendment Inst. (June 12, 2020), https://perma.cc/GQX3-WKCN; Stephanie Krent, *Recently Released OLC Opinions from 1974 Shed Light on Current Legal Debates*, Knight First Amendment Inst. (May 18, 2020), https://perma.cc/34N2-UAQ3.

[8] *See, e.g.*, Anna Diakun & Trevor Timm, *For the Biden Administration, Who Counts as News Media?*, Colum. Journalism Rev. (June 9, 2021), https://perma.cc/PR7T-75FQ; Jameel Jaffer & Ramya Krishnan, *We May Never See John Bolton's Book*, N.Y. Times (Jan. 30, 2020), https://perma.cc/HGY9-638T.

[9] *See*, *e.g.*, Mia Armstrong, *Prisons Are Increasingly Banning Physical Mail*, Slate (Aug. 9, 2021), https://perma.cc/5GXW-PF9Q (describing a FOIA lawsuit filed by the Knight Institute against the BOP); Tim Cushing, *Federal Court Says Office of Legal Counsel Must Proactively Release Opinions Covering Interagency Disputes*, Tech Dirt (Sept. 18, 2020), https://perma.cc/X3GU-KTY6 (describing successful FOIA lawsuits filed by the Knight Institute against the OLC); Jessica Jerreat, *CDC Media Guidance Blacklists VOA Interview Requests,* VOA News (June 14, 2020), https://perma.cc/2KVX-WGYR (reporting on CDC email obtained by the Knight Institute under FOIA); Ellen Nakashima, *U.S. Spy Agencies Sued for Records on Whether They Warned Khashoggi of Impending Threat of Harm*, Wash. Post (Nov. 20, 2018, 8:57 PM), https://perma.cc/C6CW-TSDA (describing FOIA lawsuits); Cora Currier, *Government Can Spy on Journalists in the U.S. Using Invasive Foreign Intelligence Process*, Intercept (Sept. 17, 2018), https://perma.cc/YQ7F-NZ5R (reporting on DOJ rules obtained by the Knight Institute under FOIA); Charlie Savage, *U.S. Government Went Through These People's Phones at the Border. Read Their Stories.*, N.Y. Times (Dec. 22, 2017), https://perma.cc/H7P2-RK2T

The Institute also publishes records obtained through FOIA in "Reading Rooms" on the Institute's website, which allow the public to search, filter, and view the records.[10]

Through its research program, the Institute has published multiple influential essay series, including one focused on reimagining the First Amendment in the digital age, one addressing the technology giants' power to shape public discourse, and another on the relationship between big data and self-government.[11] In addition, the Institute has convened four research symposia—drawing practitioners, lawyers, academics, and journalists—to debate, discuss, and reflect on key issues in First Amendment doctrine and free speech theory. The first, "A First Amendment for All? Free Expression in an Age of Inequality," was held in March 2018;[12] the second, "The Tech Giants, Monopoly Power, and Public Discourse," was held in November 2019;[13] the third, "Data and Democracy," was held virtually in October 2020;[14] and the fourth, "Reimagine the Internet," was held virtually in May 2021.[15]

### *B. The records sought are urgently needed to inform the public about actual or alleged government activity.*

The documents sought are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Though OIRA denied the DHS and CBP requests to impose additional social media disclosure requirements, DOS's Disclosure Requirement remains in effect, forcing millions of people each year to disclose their sensitive personal information in exchange for a visa. *See* Defendants' Notice Regarding Policy Review and Response to Plaintiffs' Notice of Supplemental Authority at 1, Doc Society v. Blinken, No. 19 Civ. 3632 (D.D.C. Feb. 11, 2022). OIRA's analysis in relation to the two denied proposals—including its

---

(describing and publishing several hundred complaints obtained by the Knight Institute about warrantless searches of electronic devices at the border).

[10] *See, e.g.*, *The OLC's Opinions*, Knight First Amendment Inst., https://perma.cc/YFT2-EQ9D.

[11] *See Research*, Knight First Amendment Inst., https://perma.cc/TVD9-39RK.

[12] *A First Amendment for All? Free Expression in an Age of Inequality*, Knight First Amendment Inst. (Mar. 23, 2018, 8:30 AM); https://perma.cc/DM59-74KG.

[13] *The Teach Giants, Monopoly Power, and Public Discourse,* Knight First Amendment Inst. (Nov. 14, 2019), https://perma.cc/8HEZ-VS7Q.

[14] *Data and Democracy*, Knight First Amendment Inst. (Oct. 15, 2020), https://perma.cc/2ARV-CUTY.

[15] *Reimagine the Internet*, Knight First Amendment Inst. (May 10, 2021), https://perma.cc/7CNP-5F2S.

assessment of social costs or the lack of any demonstrable benefit—would apply just as equally to the ongoing DOS policy.

DOS's policy continues to have dire consequences for free speech. If people know the government is watching their social media, they may change the way they act online to avoid engaging with controversial topics or associating with political friends or associates. Such surveillance is especially harmful to racial, religious, and political minorities who have been marginalized by the U.S. immigration system. *See* Faiza Patel, Rachel Levinson-Waldman, Raya Koreh & Sophia DenUyl, Brennan Ctr. For Just., *Social Media Monitoring*, https://www.brennancenter.org/our-work/research-reports/social-media-monitoring?gclid=Cj0KCQjwo-aCBhC-ARIsAAkNQitq E32tIZH Hnu3dgq9AOz_VIZc5PVO31QIbppljDaTclRwQ-p_I5toaAkC_EALw_wcB&ms=gad_social%20media%20monitoring_480014151830_8626214133_113573511296 (last updated March 11, 2020) ("DHS's social media monitoring pilot programs seem to have focused in large part on Muslims: at least two targeted Syrian refugees, one targeted both Syrian and Iraqi refugees, and the analytical tool used in at least two pilots was tailored to Arabic speakers."). And people in especially precarious situations, like foreign human rights activists or political dissidents, may refrain from using social media or from applying for travel authorizations out of fear that the collected information will be shared, intentionally or unintentionally, with their persecutors. Other countries may also follow the United States' lead and decide to start surveilling the social media accounts of American tourists. Taylor Moore, Ctr. for Democracy & Tech., *DHS Misses the Mark in Attempts to Quell Public Concerns on the Gathering of Social Media Handles* (Sept. 30, 2016), https://cdt.org/insights/dhs-misses-the-mark-in-attempts-to-quell-public-concerns-on-the-gathering-of-social-media-handles.

Moreover, no publicly available information has ever shown social media vetting to be useful. During the Biden administration's recent review of this practice, an intelligence official within the Office of the Director of National Intelligence acknowledged that collecting social media information has added "no value" to the visa screening process. *See* Charlie Savage, *Visa Applicants' Social Media Data Doesn't Help Screen for Terrorism, Documents Show*, New York Times, Oct. 5, 2023, https://www.nytimes.com/2023/10/05/us/social-media-screening-visa-terrorism.html. And in October 2023, a senior administration official admitted that "collecting social media data had yet to help identify terrorists among visa applicants." *Id.*

Given the ongoing collection of social media information, the public has an urgent need to know how OIRA is evaluating the risks and benefits of using social media identifiers in the visa vetting process, for travel authorizations, and other immigration purposes.

For these reasons, the Knight Institute is entitled to expedited processing.

## IV. Application for Waiver or Limitation of Fees

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested record is in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the record would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute performs scholarly research on the application of the First Amendment in the digital era. The Institute's research program brings together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It publishes that commentary in many forms, including in scholarly publications and in short-form essays.

The Knight Institute also requests a waiver of search and review fees on the grounds that it is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Institute meets the statutory definition of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); *accord Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 231 (D. Conn. 2012); *ACLU of Wash.*

*V. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); *ACLU*, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Knight Institute, to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

*   *   *

Thank you for your attention to our request. We would be happy to discuss its terms with you over the phone or via email to clarify any aspect of it.

/s/ *Anna Diakun*

Anna Diakun
Carrie DeCell
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
anna.diakun@knightcolumbia.org
carrie.decell@knightcolumbia.org