# EXHIBIT F

Tuesday, August 18, 2026 at 12:39:26 Eastern Daylight Time

**Subject:** 2026-492 FW: New FOIA request received for Office of Management and Budget
**Date:** Monday, March 30, 2026 at 3:34:32 PM Eastern Daylight Time
**From:** MBX OMB FOIA
**To:** Anna Diakun
**Attachments:** FOIA Request confirmation #2828546.pdf

**This Message Is From an External Sender**
This message came from outside your organization.

Hello,

This email acknowledges receipt of your Freedom of Information Act (FOIA) request to the Office of Management and Budget (OMB) received in this office on March 30, 2026. Your request has been logged in and is being processed. For your reference, the OMB FOIA number is 2026-492.

Thank you,
OMB's FOIA Office

**From:** National FOIA Portal <National.FOIAPortal@usdoj.gov>
**Sent:** Monday, March 30, 2026 3:00 PM
**To:** MBX OMB FOIA <MBX.OMB.FOIA@OMB.eop.gov>
**Subject:** New FOIA request received for Office of Management and Budget

Hello,

A new FOIA request was submitted to your agency component:

The following list contains the entire submission submitted March 30, 2026 03:00:23pm ET, and is formatted for ease of viewing and printing.

## Contact information

| | |
|---|---|
| **First name** | Anna |
| **Last name** | Diakun |
| **Mailing Address** | 475 Riverside Drive<br>Suite 302 |
| **City** | New York |
| **State/Province** | New York |
| **Postal Code** | 10115 |
| **Country** | United States |
| **Phone** | 7168667950 |
| **Company/Organization** | Knight First Amendment Institute at Columbia University |
| **Email** | anna.diakun@knightcolumbia.org |

## Request

| | |
|---|---|
| **Request ID** | 2825136 |
| **Confirmation ID** | 2828546 |
| **Request description** | I request all records and communications relating to OIRA's review of and decision regarding ICR Reference Number 202511-1615-008, titled "Generic Clearance for the Collection of Social Media Identifier(s) on Immigration Forms." The proposal was received in OIRA on November 25, 2025, and OIRA's review concluded on February 11, 2026. I ask that you disclose all segregable portions of otherwise exempt records. See 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the records electronically in a text-searchable, static-image format (e.g., PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files. |

## Supporting documentation

## Fees

**Request**

**category ID** educational

**Fee waiver** yes

**Explanation** The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records are in the public interest and that disclosure is "likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records would be in the public interest because they would help illuminate the decision to require disclosure of social media identifiers on nine different USCIS forms for immigration-related benefits. Under this requirement, an estimated 3,468,668 individuals or households will provide their social media information to the government each year, including pseudonymous identifiers. Such a requirement has significant costs for free expression and association online, including the right to speak anonymously. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any information disclosed available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA to ensure "that it be liberally construed in favor of waivers for noncommercial requesters." See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003). The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute performs scholarly research on the application of the First Amendment in the digital era. The Institute's research program brings together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It publishes that commentary in many forms, including in scholarly publications and in short-form essays. The Knight Institute also requests a waiver of search and review fees on the grounds that it is a "representative of the news media" within the meaning of FOIA and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute meets the statutory definition of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); see also Nat'l Sec. Archive v. DOD, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of FOIA); accord Serv. Women's Action Network v. DOD, 888 F. Supp. 2d 231 (D. Conn. 2012); ACLU of Wash. V. DOJ, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011); ACLU, 321 F. Supp. 2d at 30 n.5. Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Knight Institute, to be "representatives of the news media." See, e.g., Cause of Action v. IRS, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); Elec. Privacy Info. Ctr., 241 F. Supp. 2d at 10–15 (finding non-profit group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); Nat'l Sec. Archive, 880 F.2d at 1387; Judicial Watch, Inc. v. DOJ, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester). For these reasons, the Knight Institute is entitled to a fee waiver.

**Willing to pay** $25

---

## Expedited processing

**Expedited Processing** yes

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the requested records because the information they contain is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). The Knight Institute is "primarily engaged in disseminating

| | |
|---|---|
| **Explanation** | information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II). The Knight First Amendment Institute was established at Columbia University to defend and strengthen the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission. See About the Knight Institute, Knight First Amendment Inst., https://perma.cc/8UYT-RUUZ. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute performs. See ACLU v. DOJ, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information" (quoting Elec. Privacy Info. Ctr. v. DOD, 241 F. Supp. 2d 5, 11 (D.D.C. 2003))). See About the Knight Institute, Knight First Amendment Inst., https://perma.cc/8UYT-RUUZ (explaining that a priority of the Knight Institute's work is "ensuring access to information necessary for self-government"). For example, the Institute disseminates information about government activity—including information obtained through FOIA—through a variety of means, including its website, BlueSky account, press releases, blog posts, op-eds, and regular engagement with the press. The Institute also publishes records obtained through FOIA in "Reading Rooms" on the Institute's website, which allow the public to search, filter, and view the records. Through its research program, the Institute has published multiple influential essay series, including one focused on reimagining the First Amendment in the digital age, one addressing the technology giants' power to shape public discourse, and another on the relationship between big data and self-government. In addition, the Institute has convened several research symposia—drawing practitioners, lawyers, academics, and journalists—to debate, discuss, and reflect on key issues in First Amendment doctrine and free speech theory. The documents sought are urgently needed to inform the public about actual or alleged government activity. See 5 U.S.C. § 552(a)(6)(E)(v)(II). OIRA recently granted USCIS's request to impose new social media disclosure requirements, but for a period of only one year. OIRA's analysis in relation to this proposal—including its assessment of social costs or any demonstrable benefit—is of immense public interest, especially in light of OIRA's decision in April 2021 to reject a similar DHS proposal because "the agency ha[d] not adequately demonstrated the practical utility of collecting this information." USCIS's policy will have dire consequences for free speech. If people know the government is watching their social media, they may change the way they act online to avoid engaging with controversial topics or associating with political friends or associates. Such surveillance is especially harmful to racial, religious, and political minorities who have been marginalized by the U.S. immigration system. See Faiza Patel, Rachel Levinson-Waldman, Raya Koreh & Sophia DenUyl, Brennan Ctr. For Just., Social Media Monitoring, https://www.brennancenter.org/our-work/research-reports/social-media-monitoring?gclid=Cj0KCQjwo-aCBhC-ARIsAAkNQitq E32tIZHHnu3dgq9AOz_VIZc5PVO31QIbppljDaTclRwQ-p_I5toaAkC_EALw_wcB&ms=gad_social%20media%20monitoring_480014151830_8626214133_113573511296 (last updated March 11, 2020) ("DHS's social media monitoring pilot programs seem to have focused in large part on Muslims: at least two targeted Syrian refugees, one targeted both Syrian and Iraqi refugees, and the analytical tool used in at least two pilots was tailored to Arabic speakers."). And people in especially precarious situations may refrain from using social media or from applying for immigration benefits out of fear that the collected information will be shared, intentionally or unintentionally, with their persecutors. And other countries may also follow the United States' lead and decide to start surveilling the social media accounts of American tourists. Taylor Moore, Ctr. for Democracy & Tech., DHS Misses the Mark in Attempts to Quell Public Concerns on the Gathering of Social Media Handles (Sept. 30, 2016), https://cdt.org/insights/dhs-misses-the-mark-in-attempts-to-quell-public-concerns-on-the-gathering-of-social-media-handles. Moreover, no publicly available information has ever shown social media vetting to be useful. During the Biden administration's recent review of this practice, an intelligence official within the Office of the Director of National Intelligence acknowledged that collecting social media information has added "no value" to the visa screening process. See Charlie Savage, Visa Applicants' Social Media Data Doesn't Help Screen for Terrorism, Documents Show, New York Times, Oct. 5, 2023, https://www.nytimes.com/2023/10/05/us/social-media-screening-visa-terrorism.html. And in October 2023, a senior administration official admitted that "collecting social media data had yet to help identify terrorists among visa applicants." Id. Given this collection of social media information, the public has an urgent need to know how OIRA is evaluating the risks and benefits of using social media identifiers for vetting applicants for immigration benefits. For these reasons, the Knight Institute is entitled to expedited processing. |

## Additional information

**attachments_supporting_documentation**

The following table contains the entire submission, and is formatted for ease of copy/pasting into a spreadsheet.

| request_id | confirmation_id | attachments_supporting_documentation | address_city | address_country | address_line1 | address_line2 | address_state_prov |
|---|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| 2825136 | 2828546 | New York | United States | 475 Riverside Drive | Suite 302 | New York |